**Leon G. NICHOLS, et al., Plaintiffs,**

**Rudolph J. Bystrak, et al.,
Intervenors-Appellants,**

**v.**

**MOBILE BOARD OF REALTORS, INC.,
et al., Defendants-Appellees.**

**No. 80–7616.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

May 10, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Shores & Moore, James L. Shores, Jr., Fairhope, Ala., for intervenors-appellants.

Tonsmeire, McFadden & Riley, John W. Parker, Mobile, Ala., Valentine A. Weber, Charles Besser, Michael A. Kahn, Chicago, Ill., for defendants-appellees.

Before RONEY, KRAVITCH and AN-DERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this private antitrust case, intervenors-appellants, Rudolph J. Bystrak, Rosa Willard Poiroux, and Larry C. Mosley, seek review of a class decertification order obtained by defendants-appellees, Mobile County Board of Realtors, Inc., and various real estate brokers. The appellants contend that the appellees have conspired to fix prices in the real estate brokerage services market in Mobile County, Alabama, and have conspired in an attempt to monopolize that market, in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 (West Supp.1981). On July 11, 1978, the district court conditionally certified two classes: (1) under Fed.R.Civ.P. 23(b)(3), as to damages, a class of all persons other than home builders who paid a commission or fee to one or more of the appellee real estate brokers in connection with the sale of residential real estate situated in Mobile County, Alabama, on and after November 26, 1972, and (2) under Fed.R.Civ.P. 23(b)(2), as to injunctive relief, a class of all persons other than home builders who wish to use the services of appellees in connection with the sale of residential real estate situated in Mobile County, Alabama. On January 18, 1980, after a hearing, the district court entered an order decertifying the two classes. On January 28, 1980, after the original named plaintiffs in this case accepted appellees' settlement offer as to their individual claims, the district court entered final judgment, dismissing the complaint with prejudice. Appellants then (1) moved to intervene solely for the purpose of appealing the class decertification order, and (2) filed a notice of appeal. This court dismissed the appeal and remanded the case to the district court. *Nichols v. Mobile Board of Realtors, Inc.*, No. 80–7157 (5th Cir. May 5, 1980). Subsequently, the district court granted appellants' motion to intervene and appellants filed a new notice of appeal. We affirm.

## I. ISSUES

This case presents two issues: (1) whether this court presently has jurisdiction to review the class decertification order, and (2) whether the district court improperly decertified the two classes.

## II. MOTION TO DISMISS

■ Appellees move to dismiss this appeal as "interlocutory." Their primary argument is that once the district court decertified the classes, a putative class member desiring to appeal the decertification order first had to endure a trial on the merits of his individual claim. We conclude that the decertification order is presently reviewable.

■ Contrary to appellees' contentions, appellants properly seek review of the decertification order, pursuant to 28 U.S.C.A. § 1291 (West 1966). On January 28, 1980, after the original named plaintiffs settled their individual claims with the appellees, the district court dismissed the complaint with prejudice and entered final judgment in favor of the appellees. A dismissal with prejudice clearly is a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute a judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Thus, a dismissal with prejudice is a "final decision" under § 1291. Further, once the district court permits intervention, the intervenor has the right to appeal from all interlocutory and final orders affecting him. 3B *Moore's Federal Practice*, ¶ 24.15 at 24–566 (1981). Here, the district court permitted appellants to intervene solely for the purpose of appeal. Appellees do not argue that appellants are not affected by the decertification order. Thus, appellants may properly contest the district court's ruling on decertification.

Appellees strenuously urge that the *Livesay* Court imposed the requirement that before a class decertification order is reviewable, some class member must submit

to a trial on the merits of his individual claim. We cannot agree with this reading of *Livesay*. The *Livesay* Court merely rejected the death knell doctrine as an exception to the final judgment rule of § 1291. Before *Livesay*, a potential class representative could appeal immediately an order denying class certification, if that order effectively made it too expensive for the plaintiff to continue the litigation. 437 U.S. at 469–70, 98 S.Ct. at 2458. In rejecting the death knell doctrine, the *Livesay* Court observed that whether a district court's decision is "final" under § 1291 turns on whether the decision "ends the litigation on the merits," with some exceptions not applicable here. *Id.* at 467, 98 S.Ct. at 2457. An order denying class certification, by itself, is not final "because the plaintiff is free to proceed on his individual claim," *id.*, not because the plaintiff has not gone to trial, as appellees would have us read the *Livesay* opinion. Here, the dismissal of the original named plaintiffs' complaint with prejudice and the entry of final judgment in favor of the appellees has ended the litigation on the merits and has foreclosed the original plaintiffs from proceeding with their individual claims. Thus, the intervenors appeal from a properly "final" decision under § 1291.

A pre-*Livesay* decision of the Supreme Court supports our conclusion on the appealability issue. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). In *McDonald*, the district court denied class certification. After the named plaintiffs settled with the defendant, the district court dismissed the complaints. Upon learning that the named plaintiffs did not intend to appeal the denial of class certification, a putative class member then moved to intervene solely to appeal that issue. The Supreme Court held that the motion was timely and should have been granted. *Id.* at 396, 97 S.Ct. at 2470.

Technically speaking, the *McDonald* Court considered only whether the intervenor's post-judgment application to intervene was timely under Fed.R.Civ.P. 24(b). 432 U.S. at 391, 97 S.Ct. at 2468. However, in deciding this question, the Court characterized the entry of the judgment dismissing the complaints after the settlement as an "entry of final judgment" that "made the adverse class determination appealable." [1] *Id.* at 394, 97 S.Ct. at 2469.

In a recent decision, the Supreme Court further indicated that the *McDonald* case fully comports with the *Livesay* opinion. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). In *Roper*, after noting that an "important ingredient" of the *Livesay* opinion was the "appealability of the class certification question *after* final judgment on the merits," *id.* at 337–38, 100 S.Ct. at 1173 (emphasis in original), the Court observed that *McDonald* involved a "judgment entered on the merits." *Id.* at 338, 100 S.Ct. at 1173. Indeed, the *Roper* Court stated that a district court may even have "a responsibility, prior to approval of a settlement and . . . dismissal of the class action, to provide an opportunity for intervention by a member of the putative class for the purpose of appealing the denial of class certification." *Id.* at 332 n.5, 100 S.Ct. at 1171 n.5 (citing *United Airlines, Inc. v. Mc-*

---

1. It is true that the settlement in *McDonald* was slightly different from an ordinary settlement like the one in this case. As the Supreme Court noted, although the named plaintiffs in *McDonald* agreed to a disposition of their individual claims that resulted in dismissal of their complaints, that agreement came only after some plaintiffs had obtained partial summary judgment. In addition, the defendant's liability was clear from an earlier decision. Essentially all that remained before the settlement was a computation of damages, using the principles of the earlier decision. 432 U.S. at 393 n.14, 97 S.Ct. at 2469 n.14. However, we do not view these differences as having any significance with respect to the appealability issue. The Supreme Court itself noted these differences only in connection with the *McDonald* defendant's claim of unfair surprise. The Court decided that the defendant was not unduly prejudiced by the subsequent motion of a putative class member to intervene solely to appeal the denial of class certification. *Id.* Evidently, the Court did not consider the unusual presettlement posture of the case to have any significance with respect to the appealability question.

*Donald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977)).

In support of their challenge to appealability, appellees cite two post-*Livesay* cases from other circuits holding that when a named plaintiff induces a dismissal of his complaint by failing to prosecute, after the denial of class certification, such denial is unreviewable on appeal from the final judgment of dismissal. *Bowe v. First of Denver Mortgage Investors,* 613 F.2d 798, 801–02 (10th Cir.), *cert. denied,* 447 U.S. 906, 100 S.Ct. 2989, 64 L.Ed.2d 855 (1980); *Huey v. Teledyne, Inc.,* 608 F.2d 1234, 1240 (9th Cir. 1979). We conclude that appellees' reliance on these cases is misplaced.

First, this court has apparently rejected, *sub silentio,* the rule adopted in *Huey* and *Bowe. McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554 (5th Cir. 1981). In *McGowan,* the named plaintiffs appealed (1) from a dismissal of their complaint for want of prosecution and for failure to follow orders of the court, and (2) from the denial of class certification. *Id.* at 555. The *McGowan* court (1) reversed the dismissal of the complaint, *id.* at 558, and (2) affirmed the denial of class certification, *id.* at 560. Although *McGowan* was decided well after *Huey* and *Bowe,* the *McGowan* court cited neither case, and indeed did not discuss the issue of whether the denial of class certification was reviewable on appeal from a dismissal based in part upon failure to prosecute. However, because the *McGowan* court did address and decide the question of the denial of class certification, thus reaching the issue that *Huey* and *Bowe* refused to consider, the *McGowan* court *sub silentio* rejected the strict rule adopted in *Huey* and *Bowe.*

Second, assuming *arguendo* that the rule of *Huey* and *Bowe* may have some merit, we would decline to extend the rule to this case. Unlike *Huey* and *Bowe,* this case involves neither a dismissal for failure to prosecute, nor the inducement of a dismissal solely for the purpose of appealing the class decertification. Here, after a final judgment dismissing the named plaintiff's complaints because of settlement, three pu-

tative class members have intervened solely for the purpose of appealing the district court's decertification of the class action. As discussed earlier, the *McDonald* and *Roper* decisions support the reviewability of the class decertification issue in such a procedural context. Indeed, as mentioned earlier, the *Roper* Court stated that a district court may even have "a responsibility, prior to approval of a settlement and ... dismissal of the class action, to provide an opportunity for intervention by a member of the putative class for the purpose of appealing the denial of class certification." 445 U.S. at 332 n.5, 100 S.Ct. at 1171 n.5.

Appellees' other arguments for dismissal of the appeal are without merit. Accordingly, we hold that the class decertification order is presently reviewable. We therefore deny appellees' motion to dismiss this appeal.

## III. DECERTIFICATION OF THE CLASS SEEKING DAMAGES

Appellants contend that the district court improperly decertified the class seeking damages for appellees' alleged antitrust violations. Relying primarily on *Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (5th Cir. 1978), the district court concluded that the determination of appellees' liability to each class member required individualized examination of each brokerage transaction, in order to establish the free market commission rate that appellees allegedly exceeded. Thus, the district court ruled, questions common to the class did not predominate over questions affecting only individual class members, precluding class certification under Fed.R.Civ.P. 23(b)(3). We uphold the district court's decertification of the class seeking damages.

Section 4 of the Clayton Act, 15 U.S.C.A. § 15 (West Supp.1981), provides a civil cause of action for Sherman Act violations. Private antitrust liability under § 4 of the Clayton Act requires the showing of (1) a violation of the antitrust laws, (2) the fact of damage, and (3) some indication of the amount of damage. *Jot-Em-Down Store (JEDS), Inc. v. Cotter & Co.,* 651 F.2d

245, 247 (5th Cir. 1981); *Alabama v. Blue Bird Body Co.*, 573 F.2d at 317; *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 20 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974). The requirement of the "fact of damage," also called "impact," means that the antitrust violation must cause injury to the antitrust plaintiff. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 563, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442, 448 (1981) (to recover treble damages under § 4 of the Clayton Act, plaintiff must make some showing of actual injury attributable to antitrust violation), *on remand*, 670 F.2d 575, 578 (5th Cir. 1982); *Alabama v. Blue Bird Body Co.*, 573 F.2d at 317. As appellants argue here, in a price fixing case,[2] impact may be shown simply by proof of purchase at a price higher than the competitive rate. *Id.* at 317.

■ A prerequisite to class certification under Fed.R.Civ.P. 23(b)(3) is a district court's finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Rule 23(b)(3). In other words, the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. The fundamental problem of appellants' case here is that no showing was made in the class decertification hearing as to how the class representatives would demonstrate impact by means of generalized proof.

2. We recognize that this case involves allegations of both price-fixing and attempted monopolization. However, the only damages alleged and sought as a result of both antitrust violations are the difference between the brokerage commissions paid and the commissions that should have been charged in the absence of the alleged price-fixing and attempted monopolization. Thus, the appellants have approached the fact of damage issue as though this case involved only allegations of price-fixing. The appellants neither allege nor seek any other damages that might flow from the alleged attempted monopolization. Accordingly, we treat the fact of damage question as though this case involved only price-fixing.

■ The district court here characterized the product market as "real estate brokerage services," and described the diverse range of such services available from the various real estate brokers:

> Several firms offer one or more unique services to potential clients. These include, for example, a guaranteed sales program, under which the broker will purchase the home for his own account if it has not sold within a specified period; a home warranty plan, under which the home buyer is protected against certain defects in the home for one year; assistance in finding financing. Larger firms offer "neighborhood specialists," who spend most or all of their time in one area of Mobile County. One older firm, which has numerous clients of long standing, has standing requests for certain types of property, and can offer to a seller the advantage of an immediate sale. It seldom lists property with the multiple listing system, and often does not enter into a written contract for its brokerage services. Several brokers have earned the designation "certified residential broker" from the National Marketing Institute of the National Association of Realtors, by attending training seminars. Several other brokers have a 24-hour answering service to avoid missing potential buyers. A realtor may offer one or more of the above specialized services to a seller.

The district court concluded that the product market at issue was "at least as diverse as the number of real estate brokers, in that each broker offers a unique 'bundle of services' to potential home sellers."[3]

3. On appeal, appellants contend that the district court's definition of the product market was overly broad. Appellants would define the product market as only the "brokerage function" of the total service rendered by a real estate broker. Appellants further define the brokerage function to consist only of "bringing buyer and seller together." However, we cannot perceive how the district court in this case could have defined the product market any more narrowly than the entire, diverse range of services offered by each broker. The appellants' basic antitrust claim is that the appellees fixed the commission charged for selling homes. On the evidence before it, the district court concluded that the range of services of-

Even with the diversity of services offered by each broker, the district court recognized that subclasses, consisting of sellers who dealt with particular brokers, might be appropriate. However, the district court found that the differences (1) among sellers, and (2) among the homes sold, further affected the commission charged:

A seller will himself bring several unique characteristics to a brokerage transaction. If the seller demands a price for the home which is in the broker's opinion higher than the home is likely to bring, the broker will charge a higher commission because of the additional difficulty he expects in selling the home. If a broker has dealt with a seller before, he may know him as one who drives a hard bargain, or as one who is more willing to make concessions in order to facilitate the sale; the broker may adjust his commission accordingly. The seller may make special demands of the broker: one of the named plaintiffs permitted her home to be shown only once so that no one would know that it was on the market. Other seller characteristics, such as the need for a quick sale, and the amount of the seller's equity, may have an effect on the commission rate.

The characteristics of the home also introduce several variables in the services which may be required by the home seller. A home in poor condition will be harder to sell than one in good repair, and will require more effort by the broker. A home in the country will require more travel to show the home than will a home in the city. The plaintiffs' expert testified that the price of a home could also affect the commission charged.

Thus, the district court concluded, "the 'bundle of services' actually sold to one seller may be significantly different from the services sold to another seller, even where the same broker is involved."

In response to the district court's finding that the diversity of services offered, sellers, and home characteristics all affect the commission charged, the appellants merely assert that the district court was "beguiled by the testimony of the parade of real estate brokers describing in laudatory terms the superficial distinctions of how they attract business." Yet, appellants have not cited to any portion of the record to demonstrate that the district court improperly failed to conclude that real estate brokerage services are a homogeneous or fungible product. Our independent review of the record persuades us that the evidence adduced at the decertification hearing adequately supports the district court's conclusions in this regard.[4]

The district court's findings on the diversity of factors determining the brokerage commissions support its conclusion that questions common to the class do not predominate over questions affecting only individual class members. Appellees concede, for the purposes of the class decertification question, that the issue of whether appellees conspired to fix brokerage commissions is a question susceptible to generalized proof. However, this does not end the inquiry. As discussed earlier, this case involves the issue of whether each class member suffered the "fact of damage" as a result of appellees' conduct. As the district court observed, the commissions charged in this case range from one to twelve percent

---

fered by each broker had an effect on the commission charged. Thus, the allegedly fixed commissions consist in part of the cost of having all those services available. The appellants have not established that the evidence does not adequately support the district court's conclusion on this point. Nor did the class representatives ever offer to the district court any method of determining what portion of the commission reflected the charge for the vaguely defined "brokerage function." Accordingly, we hold that the district court did not improperly define the relevant product market.

4. One apparent fact that raises some doubt is that 86.5% of all commissions charged were either 6 or 7% of the home selling price. This suggests that the differences among brokers, sellers, and homes might not be as significant as the district court found they were. However, considering the opposing evidence before the district court, we cannot conclude that the district court improperly held that a diverse range of considerations determined the brokerage commission rate.

of the home selling price, or from $25 to $1500 when charged as a flat fee, although apparently 86.5% of the commissions were either 6 or 7% of the home selling price. The appellants argue that every single one of those commissions, paid by the 4,516 class members, resulted from unlawful price-fixing. The appellants further argue that they intend to establish the fact of injury by comparing the commission actually paid with the commission that should have been charged in a competitive brokerage services market. The fatal defect in their quest for class certification, however, is that neither the class representatives in the decertification hearing nor the intervenors here advance any viable theory, employing generalized proof, for determining the commission that should have been charged in a competitive market.

One theory that the class representatives did advance in the decertification hearing was that the class members' brokerage transactions displayed "more similarities than differences." Evidently, appellants would show that some sort of competitive rate or rate range could be determined from those similarities that was below the commissions paid by the class members. However, the district court found that the alleged similarities appeared in only some of the brokerage transactions, and further that the individualized characteristics of the broker, seller and home were "more significant determinants of the commission rate charged." Again, the appellants have failed to establish that the evidence does not adequately support these findings.[5]

Appellants argue that the district court's findings with respect to (1) whether the class members' brokerage transactions contain more similarities than differences, and (2) whether real estate brokerage serv-

ices are homogeneous and fungible products, are tainted with prejudgments of the merits of appellants' claims. We cannot agree. It is true that in determining whether to certify or to decertify a class action, the district court must refrain from considering whether plaintiffs will prevail on the merits. *Cruz v. Hauck*, 627 F.2d 710, 715 (5th Cir. 1980); *Huff v. N. D. Cass Company of Alabama*, 485 F.2d 710, 714 (5th Cir. 1973) (en banc). However, the district court here merely determined the various considerations that influenced the commission rates and the relative weights that brokers assigned to each consideration. Such a determination does not decide whether the brokers fixed the price charged for each consideration, and thus fixed the final commission rate paid by the sellers.

Appellants' repeated assertions (1) that appellees conspired to fix real estate brokerage commissions, and (2) that each class member's commission was the result of the price-fixing conspiracy, establish only one-half of the fact of damage question: the payment of an allegedly supracompetitive price. Appellants have advanced no viable theory, employing generalized proof, for establishing the other half of the fact of damage issue: whether the class members paid more than they would have in the absence of antitrust violations. This part of the fact of damage question does not require the class representatives to pinpoint an exact competitive price for each class member. Indeed, the class representatives could have satisfied this portion of the fact of damage issue merely by demonstrating, through generalized proof, that the competitive commission rate for groups of or for individual class members existed at least over a range, the highest point of which was less than the commissions actually paid.

---

5. From the class representatives' presentation at the decertification hearing, the district court extracted another possible theory for proving the fact of damage by means of generalized proof: that a flat commission rate would have prevailed for all real estate brokerage commissions in the absence of appellees' alleged antitrust violations. Apparently, appellants have abandoned this theory, conceding in their brief,

p. 29, that the class representatives never alleged or offered to prove that a flat rate would have prevailed. Thus, we need not decide whether the district court properly concluded that the expert testimony offered by the class representatives was insufficient to establish such a theory at this procedural stage of the litigation.

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), *quoted with approval in Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 325 n.31 (5th Cir. 1978). No putative class representative in this case has even advanced such a theory.

▬▬ Because of the diverse factors determining the brokerage commissions and because of the absence of any viable theory of generalized proof for the fact of damage, the district court concluded that this case would degenerate into a series of mini-trials before liability could be established. *See Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir. 1978) (justification for class certification absent when effect of certification is to bring in thousands of possible claimants whose presence will require multitude of mini-trials). That is, whether each class member suffered injury as a result of the alleged antitrust violations could be determined only by an individualized examination of the particular characteristics of the class member's sale. A district court's decision on class certification is reviewable only for abuse of discretion. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038–39 (5th Cir. 1981); *Walker v. Jim Dandy Co.*, 638 F.2d 1330, 1334 (5th Cir. 1981). We hold that the district court here did not abuse its discretion in decertifying the Rule 23(b)(3) class seeking damages.

As did the court in *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978), we emphasize that we do not "hold as a matter of law that the impact requirement in the case before us defeats any possibility of a class certification." *Id.* at 328. We merely hold that the class representatives have failed to advance any viable theory employing generalized proof to establish the fact of damage with respect to the class involved in this case.[6] Nor do we hold as a matter of law that real estate brokerage services, by their nature, are nonhomogeneous and nonfungible. We merely hold that the appellants failed to show that the district court's conclusions in this regard, with respect to the facts of this particular case, were an abuse of discretion.[7]

## IV.  DECERTIFICATION OF THE CLASS SEEKING INJUNCTIVE RELIEF

Appellants contend that the district court improperly decertified the class seeking injunctive relief for the appellees' alleged antitrust violations. Appellants' brief discussion of the district court's decertification of this Fed.R.Civ.P. 23(b)(2) class has not persuaded us that the district court's ruling should be reversed with respect to that class.

For the reasons discussed above, the district court's judgment in favor of the defendants is

AFFIRMED.

---

6. In *Voith v. Allardt Gallery of Homes, Inc.*, No. IP 78–147–C (S.D.Ind. Mar. 6, 1981), for example, the class representatives indicated that the fact of damage would be demonstrated "by establishing an estimated rate schedule for brokers' fees" that would have prevailed had no antitrust violations occurred. Slip op. at 12.

7. In *Hughes v. Baird & Warner, Inc.*, 1980–2 Trade Cas. ¶ 63,545 (N.D.Ill.1980), for example, the district court found that the individual characteristics of each broker, seller, and home "would seem to be irrelevant, in that the commission rate charged is the same regardless of the difficulty of the sale." *Id.* at p. 76,923 (distinguishing the district court's opinion in the instant case).