United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2004

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
for the Fifth Circuit

m 03-40691

BERT A. ROBINSON,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED;
MARY LUMAN,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED;
TOYIA URBANIAK,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED;
KIRK T. GARNER,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellees,

VERSUS

TEXAS AUTOMOBILE DEALERS ASSOCIATION; ET AL.,
Defendants,

TEXAS AUTOMOBILE DEALERS ASSOCIATION;
ALLISON CHEVROLET,
DOING BUSINESS AS ALLISON CHEVROLET OLDSMOBILE;
BASS CHEVROLET,
DOING BUSINESS AS PETERS CHEVROLET;
MILE PILE AUTOPLEX,
DOING BUSINESS AS MIKE PILE JEEP-EAGLE;
ALFORD CHEVROLET-GEO; ET AL.;
PLAINS CHEVROLET, INC.,
DOING BUSINESS AS HIGH PLAINS AUTO CENTER;
WESTGATE CHEVROLET,
DOING BUSINESS AS WESTGATE KIA, DOING BUSINESS AS RAY JONES CHEVROLET;
W.O. BANKSTON LINCOLN-MERCURY, INC.,
DOING BUSINESS AS W.O. BANKSTON LINCOLN-MERCURY SAAB, INC.;

W.O. BANKSTON NISSAN; BANKSTON NISSAN IN IRVING, INC.; ET AL.;
GENE MESSER CADILLAC; GENE MESSER IMPORTS;
GENE MESSER FORD, INC.,
DOING BUSINESS AS GENE MESSER KIA, DOING BUSINESS AS CREDIT CONNECTION,
DOING BUSINESS AS FORD ESP. SW REG. PROC. CTR.,
DOING BUSINESS AS GENE MESSER VOLKSWAGEN;
GENE MESSER FORD OF AMARILLO, INC.,
DOING BUSINESS AS GENE MESSER CADILLAC, DOING BUSINESS AS GENE MESSER JEEP/EAGLE;
FOYT MOTORS, INC.,
DOING BUSINESS AS A.J. FOYT HONDA;
SMC LUXURY CARS, INC.,
DOING BUSINESS AS STERLING MCCALL LEXUS;
SOUTHWEST TOYOTA, INC.;
RODEO CHRYSLER-PLYMOUTH, INC.,
DOING BUSINESS AS RODEO DODGE, DOING BUSINESS AS VILLAGE CHRYSLER-PLYMOUTH;
MIKE SMITH AUTOPLAZA,
DOING BUSINESS AS MIKE SMITH HONDA, DOING BUSINESS AS MIKE SMITH MITSUBISHI,
DOING BUSINESS AS MIKE SMITH JEEP/EAGLE;
TOWN NORTH IMPORTS,
DOING BUSINESS AS TOWN NORTH MITSUBISHI;
TOWN NORTH NISSAN; TOWN NORTH SUZUKI,

Defendants-Appellants.

———————————————

Appeal from the United States District Court
for the Eastern District of Texas

———————————————

Before SMITH, GARZA, and PICKERING,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Texas Automobile Dealers Association ("TADA") and some of its members appeal,[1] pursuant to FED. R. CIV. P. 23(f), the conditional certification of a plaintiff class of mil-

[1] Defendants submitted three briefsSSone from TADA and two from individual dealers. Because they contain similar arguments, we refer to them collectively.

2

lions of consumers who have purchased a car in Texas since 1994. Because the proposed class does not meet the requirements of FED. R. CIV. P. 23(b)(3), we reverse the certification and remand.

## I.

Effective January 1, 1994, Texas altered the manner in which it calculated and assessed the Vehicle Inventory Tax ("VIT") imposed on automobile dealers. Before the alteration, the tax was just another overhead expense to be absorbed as part of the sales price. As a result of the amendments, the state began calculating the VIT as a percentage of the sales price of each car sold.

Based on the recommendations of the Commissioner of the Office of Consumer Credit and of the Texas Comptroller of Public Accounts, and on a statement from a sponsor of the legislation, the TADA advised[2] its members to itemize the VIT as a separate item on each sales contract and to charge it in addition to the regular "sales" or "cash" price. Although dealerships could pursue the previous approach of including the VIT as an undisclosed part of the listed sales price, a large number of dealerships followed the TADA protocol and listed the VIT[3] separately.

Alleging violations of section 4 of the Clayton Act[4] and section 1 of the Sherman Act,[5] plaintiffs sued the TADA and most dealerships[6] that adopted the TADA plan. Specifically, plaintiffs allege that, by uniformly imposing the VIT as a line item, defendants are engaged in horizontal price-fixing, conspired to create a horizontal price-fixing regime, and have been unjustly enriched.

Plaintiffs moved to certify plaintiff and defendant classes based on FED. R. CIV. P. 23-(b)(2)[7] and (3),[8] proposing a class consisting of

---

[2] The TADA did not require its members to follow this plan. It did, however, distribute standardized forms and did conduct numerous "educational sessions" to promote this particular approach. Not surprisingly, the two sides view the educational program and its recommendations through different lenses.

[3] Some dealerships used different terms for the separate charge, including, *inter alia*, "ad valorem tax," "personal property tax fee," and "VIT." For the sake of convenience, we refer to this extra fee
(continued...)

[3](...continued)
as the VIT.

[4] 15 U.S.C. § 15 (stating that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor[,] without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee").

[5] 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.").

[6] Plaintiffs sued those dealerships that belonged to the TADA and charged a VIT. Plaintiffs allege the presence of "approximately 600 defendant Dealers." The district court provided a larger figure, stating that "the court does have some concerns over the manageability of a suit against over a thousand defendants."

[7] Rule 23(b)(2) allows for injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class[.]" The district court denied the rule 23(b)(2) motion in one paragraph, and plaintiffs do
(continued...)

all persons and entities who purchased a new or used motor vehicle in Texas during the period of January 1, 1994 through the date of class certification herein, from a motor vehicle dealership which was a member of the [TADA] at the date of sale, and who were charged a 'vehicle inventory tax,' 'inventory tax,' 'Texas vehicle inventory tax,' 'ad valorem tax,' ' personal property tax fee,' 'P/P tax fee,' 'VIT,' or similarly identified ' fee or charge' as an addition to the sales price or cash price of the vehicle . . . .

As the district court noted, "Potentially, millions of consumers are included in the proposed class."

Although declining to certify a defendant class,[9] the court conditionally certified the proposed plaintiff class, finding that common issuesSSincluding the common presence of the VIT in all sales contractsSSpredominate over

individual issues[10] and opining that, despite the court's "concerns over the manageability of a suit against over a thousand defendants[,] this class action is the superior method for adjudicating this controversy."

## II.

The district court erroneously certified the plaintiff class. Facts necessary to sustain a possible horizontal price-fixing injury do not predominate. Additionally, the district court did not conduct sufficient inquiry into the management of this complex, multiparty action.

"We review the certification of a class for abuse of discretion." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737 (5th Cir. 2003). To make a determination on class certification, a district court must conduct an intense factual investigation. "There are no 'hard and fast rules . . . regarding the suitability of a particular type of antitrust case for class action treatment.' Rather, 'the unique facts of each case will generally be the determining factor governing certification.'" *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003) (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978)).

Although we review the certification decision using a deferential standard, "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Additionally, the district court's "'decision must be exercised within the framework of Rule 23.'" *McManus v. Fleet-*

---

[7](...continued)
not challenge that order.

[8] If the four requirements of rule 23(a) are met, a court may certify a class pursuant to rule 23-(b)(3) if it "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) also includes a non-exclusive list of four "matters pertinent to the findings" of superiority and numerosity.

[9] With respect to the defendant class, the court concluded that "each Defendant has the absolute right to individually defend itself by presenting direct evidence of noninvolvement in any alleged conspiracy."

[10] As part of its analysis, the district court applied the parol evidence rule to exclude possible evidence regarding negotiations over those sales contracts.

4

*wood Enters.*, 320 F.3d 545, 548 (5th Cir. 2003) (quoting *Castano*, 84 F.3d at 740). We review a district court's conclusions of law *de novo*.[11]

"The party seeking certification bears the burden of demonstrating that the requirements of rule 23 have been met."[12] Such requirements include both the four factors of rule 23(a)SSnumerosity, commonality, typicality, and adequacySSand the two requirements of rule 23(b)(3). Because defendants do not contest the plaintiffs' satisfaction of the rule 23(a) requirements, we address only whether they satisfied rule 23(b)(3).

"Rule 23(b)(3) demands of a party seeking class certification . . . the burden of demonstrating (1) that questions common to the class members predominate over questions affecting only individual members and (2) that class resolution is superior to alternative methods of adjudication of the controversy." *Bell Atl.*, 339 F.3d at 297. Although such language may resemble the words of rule 23(a), "[t]he predominance and superiority requirements are 'far more demanding' than is [R]ule 23(a)(2)'s commonality requirement."[13] Despite the fact that the district court granted certification only

conditionally, "it does not follow that the rule's requirements are lessened when the class is conditional."[14] *Castano*, 84 F.3d at 741.

### III.
### A.

In evaluating the predominance requirement, we take care to inquire into the substance and structure of the underlying claims without passing judgment on their merits. "Although 'the strength of a plaintiff's claim should not affect the certification decision,' the district court must look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'"[15]

Despite the fact that such an inquiry "does not resolve the case on its merits," it helps "prevent[] the class from degenerating into a series of individual trials." *O'Sullivan*, 319 F.3d at 738. Making a meaningful determination of the certification issues "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Id.*

Plaintiffs assert three separate claims,[16] but

---

[11] *O'Sullivan*, 319 F.3d at 737 ("Because, however, a court abuses its discretion when it makes an error of law, we apply a *de novo* standard of review to such errors.").

[12] *Id*. at 737-38 (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)). *See also Castano*, 84 F.3d at 740 ("The party seeking certification bears the burden of proof.").

[13] *O'Sullivan*, 319 F.3d at 738 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997)).

[14] *Castano*, 84 F.3d at 741.

[15] *McManus*, 320 F.3d at 548 (quoting *Castano*, 84 F.3d at 744).

[16] The plaintiffs originally alleged three different counts, two of whichSSthe horizontal price fixing and conspiracy to fix pricesSSfocus on the Clayton Act. The third charges unjust enrichment. Although plaintiffs apparently did not request certification on the unjust enrichment count, the district court recognized all three actions and
(continued...)

we need consider only whether they have defined a class whose members suffered an antitrust injury. One common factor links all aspects of the suitSSnamely, payment of the VIT. If the proposed class contains too broad a sample of consumers for something actionable under the Clayton Act to predominate, the conspiracy claim will fail as well.[17] If the mere payment of a VIT does not adequately tie the interests of the class members together for purposes of any Clayton Act violations, the class will similarly fail for any purported claim of unjust enrichment.

### B.

"Private antitrust liability under § 4 of the Clayton Act requires the showing of (1) a violation of the antitrust laws, (2) the fact of damage, and (3) some indication of the amount of damage." *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (Former 5th Cir. 1982). Because this appeal concerns only class certification questions, we address only whether the facts and law necessary to sustain a horizontal price-fixing action predominate in the proposed class.[18]

"The requirement of the 'fact of damage,'

---

[16](...continued)
generally certified the plaintiff class.

[17] "Under the rule of reason, the plaintiff must establish two elements basic to an anticompetitive conspiracy: (1) that the defendant engaged in some form of joint action and (2) that this joint action *amounted to an unreasonable restraint of trade*." *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 293 (5th Cir. 1988) (emphasis added).

[18] Given the limited nature of the appeal, we assume *arguendo* that the uniform addition and itemization of the VIT violate the Clayton Act.

also called 'impact,' means that the antitrust violation must cause injury to the antitrust plaintiff." *Id.* "[I]n a price fixing case, impact may be shown simply by proof of purchase at a price higher than the competitive rate." *Id.* (citing *Blue Bird*, 573 F.2d at 317). Although it "is generally true [that] 'antitrust price-fixing cases are particularly suitable for class action treatment,'" the proposed class still has to meet the three aforementioned requirements. *Blue Bird*, 573 F.2d at 322.[19]

Class members do not necessarily have to demonstrate impact through individualized evidence. Instead, "by demonstrating, through generalized proof, that the competitive [price] for groups of or for individual class members existed at least over a range, the highest point of which was less than the [price] actually paid[,]" a party may rely on more general proof.[20] Consequently, the baseline or "competitive" price determines whether a party may use generalized proof to sustain a claim of horizontal price fixing.[21]

---

[19] The *Blue Bird* panel, 573 F.2d at 322, described some of the requirements of a "classic" price-fixing conspiracy: "[A]ll legal and factual issues relating to the conspiracy" should bear a uniform relationship "to all those allegedly harmed," and "the products involved [and] the purchasers [should] be standardized."

[20] *Nichols*, 675 F.2d at 678 (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977)).

[21] *Bogosian* (which is not binding on us but which is informative) allows for generalized proof, provided plaintiffs show "a nationwide conspiracy[,] the result of which was to increase prices to a class of plaintiffs *beyond the prices which would obtain in a competitive regime*[.]" *Bogosian*, 561 F.2d at 455 (emphasis added).

The predominance of facts unrelated to the price-fixing claim should not provide support for certifying a class. Otherwise, commonalities based on irrelevant matters such as geographic location, sex of a party, or date of purchase might allow for class certification. We must determine whether the mere payment of a VIT‑‑unaccompanied by any other evidence‑‑provides enough information such that a party may sustain a price-fixing suit on behalf of the entire class.

### C.

By including in the plaintiff class *every* purchaser who paid a VIT, plaintiffs grouped consumers with divergent negotiating histories and removed the predominant factors needed to support this particular horizontal price-fixing claim. By incorrectly applying the parol evidence rule, the district court ignored evidence that might have helped narrow the class or even strengthen its own decision to certify. Consequently, the proposed class fails the predominance requirement of rule 23(b)(3).

The plaintiff class possesses essentially four traits. The buyer must have (1) purchased the vehicle in Texas (2) from a member of the TADA (3) on or after January 1, 1994, and (4) must have paid a VIT or "similarly identified 'fee or charge' as an addition to the sales price or cash price of the vehicle[.]" The key component of the underlying suit rests with the fourth element. Plaintiffs repeatedly focus on the sales contract to make the point that "[t]he injury is the [VIT] charge itself . . . . It is undisputed that the VIT charge is a component of the 'bottom line,' and influences and impacts what the consumer actually pays at the end of every class transaction."

Plaintiffs assume that the VIT represents an additional charge that artificially increases the final purchase price for every consumer in the class. Under plaintiffs' theory, if the charge did not exist, the consumer would pay that much less, or at least some amount less.[22] The court adopted these assumptions in its analysis.

Such an assumption defies the realities of the haggling that ensues in the American market when one buys a vehicle. Although some purchasers certainly negotiate a price that excludes taxes, titles, and fees, others negotiate with an eye to the "bottom line."[23] Bottom-line purchasers base their negotiations on the *final* purchase price, including every tax, fee, and surcharge.

If a bottom-line purchaser negotiates for a certain price‑‑say, $400 a month‑‑he does not pay more because of the presence of the VIT. Even if the dealer does not reduce or eliminate the VIT,[24] it reduces the pre-VIT cash price to drop the final price to the agreed-upon amount‑‑in this example, $400 a month.[25]

---

[22] For example, consider a consumer who agreed on a final price of $9,500 and who, as part of that price, paid a VIT of $30. Under plaintiffs' theory, if the dealership had not itemized the VIT, the consumer would have paid only $9,470.

[23] The record‑‑specifically, the testimony and depositions of auto dealers‑‑supports defendants' contention that some individuals negotiate in a bottom-line fashion.

[24] Defendants introduced evidence that some dealers did negotiate over the VIT. In any event, the burden is on plaintiffs to establish the propriety of the class. *O'Sullivan*, 319 F.3d at 737-38.

[25] Defendants provide a helpful real-life ex-
(continued...)

7

To determine whether a purchaser negotiated in a top-line or bottom-line fashion, a court would have to hear evidence regarding *each purported class member and his transaction*. Such an individual examination would destroy any alleged predominance present in the proposed class. The offered evidence plainly shows that the class members' individual negotiation styles prevent the plaintiffs from arguing that all members of the class suffered an antitrust injury just by paying a VIT.

### D.

The district court resolved the need for individual inquiries by applying the parol evidence rule inappropriately. Under that rule, terms in "a writing intended by the parties as a final expression of their agreement . . . may be not contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . ." TEX. BUS. & COM. CODE ANN. § 2.202 (Vernon 1994).

The district court considered any evidence regarding the parties' negotiations to be violative of the parol evidence rule and excluded it. By so reasoning, the district court focused exclusively on the express terms of the contractsSS"namely that [the dealerships] did in fact charge, and each Plaintiff did in fact pay, the VIT."

The district court's application of the parol evidence rule is flawed in at least two respects. First, the rule does not apply to an *antitrust* case in which no one disputes the validity and terms of the contract. "Both the parol evidence rule and the doctrine of integration exist so that parties may rely on the enforcement of agreements that have been reduced to writing." *Jack H. Brown & Co. v. Toys "R" Us, Inc.*, 906 F.2d 169, 176 (5th Cir. 1990). In the typical case involving the parol evidence rule, one party might try to introduce evidence to challenge the validity of a contract or the contract's terms.[26]

Here, however, neither side disputes the terms of the contracts, and neither argues against the validity of the contracts. If a contract lists a VIT at $42, defendants concede that the buyer owes a $42 VIT payment as part of the final purchase price. Rather, defendants challenge the assumption that the parties negotiated every contract in the same top-down manner. Such a determination has a direct impact on whether the VIT increased the total amount paid and on whether the class members may have suffered an alleged price fixing injury.

Secondly, even if the parol evidence rule were to apply, the evidence defendants wish to

---

[25](...continued) ample of a bottom-line negotiation. After running through a number of calculations, a purchaser ended up with a round number: $10,150.00. To get to that number, he had to begin with a rather irregular "cash" price of $9408.65. Defendants argue that "what plaintiffs want this Court to accept as an irrefutable fact is that [the aforementioned purchaser] negotiated with his dealer until they agreed upon a price to the penny: $9408.65. That particular negotiation then, after adding tax and fees, *just so happened* to add up to the very round number of $10,150.00."

[26] The few antitrust cases that have even mentioned the parol evidence rule have done so in the context of interpreting a settlement agreement arising out of an antitrust suit. *See, e.g.*, *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1321 (5th Cir. 1983) (applying the Louisiana parol evidence rule).

offer does not contradict the terms of the respective contracts; as we have said, defendants assume the validity of the contracts' terms. The proffered evidence, instead, addresses the negotiations leading up to the terms' inclusion. The evidence will "explain . . . or supplement[]" the terms, TEX. BUS. & COM. CODE ANN. § 2.202, so that a fact-finder might understand whether the VIT caused an antitrust injury.[27]

By applying the parol evidence rule, the district court made an incorrect assumption regarding the primary issue of the predominance inquiry. Instead of worrying about the presence of the VIT or the purported validity of the contracts, the court should have considered whether the VIT payments always would represent an antitrust injury.

### E.
Thus, the district court abused its discretion by holding that plaintiffs offered a class in which common issues predominate. The court erred by finding that the mere payment of a VIT created an antitrust injury and in applying the parol evidence rule to exclude evidence regarding the negotiating styles of the individual purchasers.

### IV.
The district court abused its discretion by finding that "this class action is the superior method for adjudicating this controversy" and by not conducting any kind of analysis or discussion regarding how it would administer the trial. Although rule 23(b)(3) lists four factors[28] to consider as part of the superiority inquiry, and though more than one factor might have some relevance, the fourth consideration—"the difficulties likely to be encountered in the management of a class action"—addresses the most troublesome aspect of this certification.

In considering the superiority requirement, a district court must possess "an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Allison*, 151 F.3d at 419. A court must consider "how a trial on the alleged causes of action would be tried." *Castano*, 84 F.3d at 752.

The district court failed to indicate how it would manage the gigantic plaintiff class and the large number of defendants. Despite admitting that it had "some concerns over the manageability of a suit against over a thousand defendants," the court decided that the conditional nature of the certification entitles it to revoke certification if problems arise with the class as defined. Of course, even with re-

---

[27] Furthermore, even if the district court correctly excluded the detailed evidence regarding the negotiation, plaintiffs could not possibly meet their burden of showing antitrust injury, because, by excluding all evidence beyond the language of the contract, the district court prevented the parties from offering evidence of the *baseline* price. Without some sort of baseline or competitive price, plaintiffs cannot show antitrust injury.

[28] The four factors are as follows:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3).

spect to a conditional certification, the court must meet the requirements of rule 23(b)(3). "[I]t does not follow that the rule's requirements are lessened when the class is conditional." *Castano*, 84 F.3d at 741.

Assuming *arguendo* that the plaintiff class contains sufficient members with cohesive interests such that the mere payment of a VIT may constitute horizontal price fixing, the district court failed to consider the complications of the plaintiffs' and defendants' presentations at trial. For example, on the plaintiffs' side, the court must find jurors who do not belong to the significantly large plaintiff class and must empanel a jury for a lengthy trial.

By not certifying a large defendant class, the district court also created an unaddressed problem in balancing two competing interests. First, as the court acknowledges, "each Defendant has the absolute right to individually defend itself by presenting direct evidence of noninvolvement in any alleged conspiracy[.]" In opposing the conspiracy charge, each of the several hundred defendants likely will want to offer a witness or two to refute any evidence offered in support of the plaintiffs' position.

Simultaneously, however, the parties have an interest in ensuring that the jurors will have a reasonable chance of remembering which party presented which evidence. The sheer number of individual defendants and the incentive to offer individual defenses create the possibility of jurors' having to base their determinations on evidence offered throughout a long proceeding.

In its certification order, the court did not indicate that it has seriously considered the administration of the trial. Instead, it appears to

have adopted a figure-it-out-as-we-go-along approach that *Castano* criticized and that other Fifth Circuit cases have not endorsed.[29] Thus, by failing to consider problems concerning the plaintiff class and the significantly large defendant group, the district court erred in its superiority inquiry.

V.

In summary, the district court erred in its consideration of both elements of rule 23-(b)(3). In conducting the predominance inquiry, the court misinterpreted the requirements for an antitrust injury, ignored the realities of purchasing a vehicle, and improperly applied the parol evidence rule to exclude evidence regarding the manner in which the class members negotiated their sales contracts. The court also abused its discretion by failing to account, in any way, for the obvious complexities that may arise.

The certification of the plaintiff class is REVERSED. We REMAND for further proceedings not inconsistent with this opinion.

---

[29] For example, *Allison* distinguished between Rule 23(b)(2) class actions and rule 23(b)(3) class actions by explaining that "proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication[,] as (b)(3) classes must." *Allison*, 151 F.3d at 414. In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999), the panel affirmed the certification of a class after describing the trial plan the district court had endorsed, finding that the court did not abuse its discretion by adopting a "bifurcated-trial plan."