DENNIS, Circuit Judge,
dissenting:
I respectfully dissent.
*272 In this appeal from the district court’s order granting class action certification, the majority departs drastically from the Supreme Court’s decision in Basic, Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), which held that securities class action plaintiffs are entitled to a rebuttable presumption of reliance, or transaction causation, if the plaintiffs traded in the stock at issue during the proposed class period in reliance on the integrity of the price set by an open and efficient market. The majority instead holds that plaintiffs are entitled to Basic ’s presumption of reliance only if they also prove loss causation, that is, if they prove by a preponderance of all admissible evidence that the defendants’ alleged misrepresentations were the proximate cause of the plaintiffs’ economic loss. The majority’s decision is, in effect, a breathtaking revision of securities class action procedure that eviscerates Basic’s fraud-on-the-market presumption, creates a split from other circuits by requiring mini-trials on the merits of cases at the class certification stage, and effectively overrules legitimately binding circuit precedents.
I also respectfully dissent from the majority’s conclusion that the district court abused its discretion in certifying this class action. The majority found that the plaintiffs’ evidence was insufficient to establish that the decline in Allegiance’s share price was related to Allegiance’s disclosure that it had overstated its line count figures, but the majority conducted what appears to have been a de novo, rather an abuse of discretion, review of the evidence in order to make that determination. In my opinion, the district court did not abuse its discretion in making the factual findings necessary to its certification of the case.
I.
The majority opinion relies heavily on this court’s earlier decision in Greenberg v. Crossroads Systems, Inc., 364 F.3d 657 (5th Cir.2004), which, the majority urges, establishes that “we require plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption.” Supra at 265; see also supra at 268. As I discuss in greater detail below, Greenberg says no such thing. Neither Greenberg nor any other decision of this court holds that proof of loss causation is part of the fraud-on-the-market presumption. The majority’s holding to the contrary amounts to a profound modification of Greenberg. See infra Part II.
Moreover, by its decision today the majority aggravates the already serious and unwarranted departure that Greenberg made from both Basic&nd prior circuit precedent.[1] In Basic, the Supreme Court held that securities plaintiffs could satisfy the reliance element of a Section 10(b) claim through the fraud-on-the-market theory. See Basic, 485 U.S. at 250, 108 S.Ct. 978. The fraud-on-the-market theory essentially permits plaintiffs to establish the element of reliance by showing (1) that the market for the securities in question was efficient and (2) that they traded in reliance on the integrity of the market price for the securities. See id. at 241-42, 108 S.Ct. 978 (“ ‘The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company’s stock is determined by the available material information regarding the company and its busi *273 ness.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.’ ”) (quoting Peil v. Speiser, 806 F.2d 1154, 1160-61 (3d Cir.1986)); id. at 247, 108 S.Ct. 978 (“[W]here materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed.”).
The Basic court also held that the fraud-on-the-market presumption is rebuttable, but it made it plain that the defendant bears the burden of establishing that the presumption should not apply:
[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance. For example, if [defendants] could show that the “market makers” were privy to the truth about the merger discussions here with Combustion, and thus that the market price would not have been affected by their misrepresentations, the causal connection could be broken: the basis for finding that the fraud had been transmitted through market price would be gone.
Id. at 248 (emphasis added).
Up until our decision in Greenberg in 2004, this court consistently recognized Basic’s holding that the defendant has the burden of rebutting the fraud-on-the-market presumption. See Nathenson v. Zonagen Inc., 267 F.3d 400, 413 (5th Cir.2001); Fine v. Am. Solar King Corp., 919 F.2d 290, 299 (5th Cir.1990); see also Lehocky v. Tidel Techs., Inc., 220 F.R.D. 491, 505 (S.D.Tex.2004). Two years after Basic, this court held that there are three ways in which a defendant can rebut the presumption: by showing “(1) that the nondisclo-sures did not affect the market price, or (2) that the Plaintiffs would have purchased the stock at the same price had they known the information that was not disclosed; or (3) that the Plaintiffs actually knew the information that was not disclosed to the market.” Fine, 919 F.2d at 299.
The Greenberg panel itself began by correctly describing Basic’s presumption of reliance in favor of the plaintiff and recognizing that Basic places the burden of rebutting the presumption on the defendant.[2] See Greenberg, 364 F.3d at 661-62. Later in its opinion, however, the Green-berg panel erroneously concluded, contrary to both Basic and this court’s prior decisions,[3] that securities plaintiffs cannot invoke the fraud-on-the-market presumption unless they first affirmatively show that the market price of the stock actually moved in response to either the defendants’ alleged misrepresentation or a corrective disclosure. See Greenberg, 364 F.3d at 663 (noting that plaintiffs must show “actual movement of [the] stock price” in order to trigger the fraud-on-the-market presumption). Thus, instead of recognizing, in accord with Basic, that the plaintiffs were entitled to a presumption of reliance by virtue of simply trading in an efficient market, Greenberg placed on the plaintiffs the additional burden of showing that the misrepresentation or the corrective disclosure moved the market price.
*274 The conflict between Basic and Green-berg is inescapable. Under Basic, the court is to -presume that the defendant’s material misstatement distorted the market price of the stock at issue. See Basic, 485 U.S. at 247, 108 S.Ct. 978 (“Because most publicly available information is reflected in market price, an investor’s reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action.”); Nath-enson, 267 F.3d at 415 (“[TJhere is generally a presumption that potentially significant publicly disseminated information is reflected in the price of stock traded on an efficient market....”). Greenberg, however, subverts the fraud-on-the-market presumption by requiring the plaintiffs to prove, as a precondition to the application of the presumption, the very facts that are to be presumed under Basic (ie., that the defendant’s material misrepresentation was reflected in the stock price). As a result, Greenberg effectively relieves the defendant of its burden under Basic to rebut the fraud-on-the-market presumption. See Regents of the Univ. of Cal., 482 F.3d 372, 401-03 (Dennis, J., concurring in the judgment).
Confronted with the argument that Greenberg improperly shifts the Basic burden, changing it from a defendant’s right of rebuttal to a plaintiffs burden of proof, the majority makes a meager effort to claim that both Greenberg and today’s decision are somehow compatible with Basic’s command that it falls to the defendant to rebut the presumption of reliance. The majority attempts to recharacterize the Basic presumption as a sort of “bursting bubble” presumption, e.g., one that “disappears if anything to the contrary is placed before the court.” United States v. Zavala, 443 F.3d 1165, 1169 (9th Cir.2006); cf. Black’s Law Dictionary 211 (8th ed.2004) (defining the “bursting bubble theory” as “[t]he principle that a presumption disappears once the presumed facts have been contradicted by credible evidence”). The majority posits that “[a]s a matter of practice, the oft-chosen defensive move is to make ‘any showing that severs the link’ between the misrepresentation and the plaintiffs loss; to do so rebuts on arrival the plaintiffs fraud-on-the-market theory.” Supra at 265. Although the majority conspicuously neglects to explain what type of evidence a defendant would have to produce to meet its standard, the clear implication is that, in the majority’s view, the Basic presumption evaporates as soon as a defendant simply introduces a mere possibility the defendant’s material misrepresentation might not have affected the market price.
The majority cannot outflank Basic so easily, however. As noted above, Basic expressly states that the defendants can rebut the presumption only if they “could show ... that the market price would not have been affected by their misrepresentations.” Basic, 485 U.S. at 248, 108 S.Ct. 978 (emphasis added). Basic thus clearly places the burdens of both producing evidence and persuasion on the defendant and requires an actual showing that the defendant’s misrepresentation did not, or could not have, affected the market price of the stock. Id.; Fine, 919 F.2d at 299 (“The presumption of reliance can be rebutted by showing ... that the nondisclo-sures did not affect the market price .... ”); see also Abell v. Potomac Ins. Co., 858 F.2d 1104, 1120 (5th Cir.1988) (stating that Basic “shift[s] the burden of persuasion, as to reliance, onto securities fraud defendants”), vacated on other grounds sub nom., Fryar v. Abell, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). Under no reasonable reading can that standard be met, as the majority suggests, by simply asserting that a particular change in the market price could have been related *275 to something other than the defendant’s misrepresentations.
For the reasons stated above, I continue to believe that Greenberg conflicts with binding precedents of both the Supreme Court and this court, and I do not therefore regard that case as binding or persuasive on the point at issue. See Modica v. Taylor, 465 F.3d 174, 183 (5th Cir.2006) (“ ‘When panel opinions appear to conflict, we are bound to follow the earlier opinion.’ ”) (quoting H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc., 227 F.3d 326, 330 (5th Cir.2001)). Consequently, the majority was not bound to repeat the Greenberg panel’s error. Instead, it should have adhered to Basic and this court’s pre-Greenberg jurisprudence, rather than repeating and — as I discuss next— exacerbating Greenberg’s flaws.
II.
Even setting aside the preceding discussion of Greenberg’s conflict with Basic, Greenberg simply does not stand for the principle the majority purports to draw from it, i.e., that “we require plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption.” Supra at 265.
In Greenberg, the court stated that in order to merit a presumption of reliance under the fraud-on-the-market theory,
[a] causal relationship between the statement and actual movement of the stock price is still required.... It is this actual movement of stock price which must be shown by fraud-on-the-market plaintiffs....
Greenberg, 364 F.3d at 663.[4] The Green-berg panel later explained how plaintiffs could satisfy this requirement of showing actual price movement:
the main concern when determining whether a plaintiff is entitled to the presumption of reliance is the causal connection between the allegedly false statement and its effect on a company’s stock price. Nathenson makes it clear that to establish this nexus the plaintiffs must be able to show that the stock price was actually affected. This is ordinarily shown by an increase in stock price immediately following the release of positive information. We read Nath-enson to also allow plaintiffs to make this showing by reference to actual negative movement in stock price following the release of the alleged “truth” of the earlier misrepresentation.
Greenberg, 364 F.3d at 665. Assuming for the sake of argument that Greenberg is correct, then, a plaintiff could satisfy Greenberg in the typical securities fraud case involving allegations that the defendant’s misrepresentations artificially inflated the issuer’s stock price by showing that the market price of the stock moved either upward at the time of the defendant’s alleged misrepresentation or downward at the time that the truth was disclosed.
The majority, however, disregards the part of Greenberg that states that the actual price movement component of its version of the fraud-on-the-market theory can be satisfied by showing an increase in the *276 stock price on the heels of the misrepresentation. Instead, the majority erroneously reads Greenberg to require the plaintiffs to establish the conceptually distinct element of loss causation, ie., proximate cause of economic loss, by showing that the stock price declined in response to a corrective disclosure, to trigger the fraud-on-the-market presumption. The majority’s rule finds no support in Greenberg. This new rule directly conflicts with the above-quoted language from Greenberg, and nothing in Greenberg so much as suggests that the showing it requires as a condition to a presumption of reliance somehow includes proof of the distinct element of loss causation.
Accordingly, because the rule that the majority purports to derive from Green-berg has no basis in that case, I could not join the majority’s opinion even were I not convinced that Greenberg conflicts with Basic and this circuit’s precedent.[5]
III.
Whatever the merits of the majority’s belief that private securities class action procedure is in need of drastic change and revision, today’s judicially-enacted reform is, in my opinion, ill-advised and cannot be justified under current law.
Under the majority’s approach, Basic’s fraud on the market presumption is essentially a dead letter, little more than a quaint reminder of earlier times, and its primary holding is supplanted by extensions of the policy considerations that the majority sees reflected in the enactment of the PSLRA and in recent amendments to Rule 23 (neither of which actually purports to alter Basic or to speak directly to the issue in this case). Such policy considerations, however, no matter how sincerely interpreted or applied, do not give this court the authority to overrule the Supreme Court’s decisions or to change the recognized elements of a Section 10(b) claim, both of which the majority effectively does today. See Unger v. Amedisys, 401 F.3d 316, 322 n. 4 (5th Cir.2005) (“[I]t is the Supreme Court’s job to overrule Basic, in the absence of outright conflict with the Private Securities Litigation Reform Act.”)
The majority states that its “approach is unaffected by the Supreme Court’s recent and very narrow decision in Dura Pharms.[, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) ].” See supra at 265 n. 16. Although Dura was indeed a narrow decision, it nevertheless undercuts the majority’s position in several respects. The Dura court reaffirmed Basic, repeatedly citing it with approval, and it expressly recognized that reliance and loss causation are separate and distinct elements of the Section 10(b) cause of action,[6] and that Basic’s fraud-on- *277 the-market presumption relates only to the former. See Dura, 544 U.S. at 341-42, 125 S.Ct. 1627.[7]
The majority’s approach simply disregards this distinction and takes the novel step of making proof of loss causation a prerequisite to the establishment of reliance through the fraud-on-the-market presumption for purposes of certification. As neither Basic nor any authority supports the majority’s decision to conflate these two elements, I cannot subscribe to the majority’s unwarranted realignment of securities class action procedure.
IV.
Because, as the above sections demonstrate, plaintiffs are not required to prove loss causation as part of the fraud-on-the-market presumption (and because defendants make no other plausible arguments for why plaintiffs should be required to prove loss causation at the class certification stage), the majority’s decision dramatically expands the scope of class certification review in this circuit to effectively require a mini-trial on the merits of plaintiffs’ claims at the certification stage. In so doing, the decision contradicts both this circuit’s Rule 23 case law and the decisions of other circuits concerning the scope of the class certification inquiry.
Before certifying a class action, the district court must ensure that the proposed class satisfies all of the requirements of Rule 23. See, e.g., Unger, 401 F.3d at 320 (“[T]he Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites.”). We must be ever mindful, however, that class certification hearings “should not be mini-trials on the merits of the class or individual claims.” Id. at 321 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). A court must conduct an “intense factual investigation,” Robinson v. Texas Automobile Dealers Association, 387 F.3d 416, 420 (5th Cir.2004), yes, and in doing so the district court must often go “beyond the pleadings” and “understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.” Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996). The district court cannot, however, go beyond those issues necessary to decide whether the requirements of Rule 23 are satisfied and rule on merits issues that are unrelated to Rule 23. See In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir.2006) (“[A] district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement.”) (emphasis added); see also Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 677 (7th Cir.2001) (“A court may not say something like ‘let’s resolve the merits first and worry about the class later’ ... or ‘I’m not going to certify a class unless I think that the plaintiffs will prevail.’ ”).
Like the district court, we must restrict our review of the merits to encompass only those issues necessary to determining *278 whether the proposed class satisfies the requirements of Rule 23. See Bell v. Ascendant Solutions, Inc., 422 F.3d 307, 314 (5th Cir.2005) (stating that Rule 23(f) permits a party to “ ‘appeal only the issue of class certification; no other issues may be raised’ ”) (quoting Bertulli v. Indep. Ass’n of Cont’l Pilots, 242 F.3d 290, 294 (5th Cir.2001)).
Proof of loss causation is not related to the Rule 23 inquiry through the fraud-on-the-market presumption, and it will not, in the ordinary case, be otherwise relevant to the district court’s Rule 23 inquiry.[8] The majority’s decision to require proof of loss causation at class certification in securities class actions therefore represents a drastic departure from this circuit’s settled limitations, laid out in Unger and Bell, on the scope of the class certification inquiry. Furthermore, it creates a conflict with the decisions of other circuits. See, e.g., Initial Pub. Offering, 471 F.3d at 41-42; Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir.2004); Szabo, 249 F.3d at 677. The majority’s consideration of merits issues unrelated to the requirements of Rule 23 breaches Eisen’s longstanding admonition against turning class certification into a mini-trial on the merits, and I cannot follow the majority down that path.
CONCLUSION
In my opinion, the new rule applied by the majority is an unjustified revision of securities class action procedure, based in large part upon the majority’s dramatic remolding of this court’s already problematic decision in Greenberg. In essence, the majority’s revised standard both ineor-rectly deprives plaintiffs of the benefit of the fraud-on-the-market presumption of reliance afforded them by Basic and inexplicably requires them to prove the separate element of loss causation at the class certification stage.
Regardless, however, the majority does not, and cannot, show that the district court abused its discretion in certifying the class in this case, even under the majority’s novel rules. The district court carefully considered the evidence before it and concluded that the plaintiffs had established that it was more likely than not that Allegiance’s restatement of its line-count numbers caused a significant portion of the subsequent decline in Allegiance’s share price. The majority nevertheless finds the district court’s decision “untenable,” and reverses simply because it is not in keeping with the majority’s de novo assessment of the conflicting evidence.
Because I disagree with both the substance of the majority’s new rule and the legal reasoning by which it was derived, and because I can discern no abuse of discretion in the district court’s decision, I respectfully dissent.

. I have recently argued at length that Green-berg irreconcilably conflicts with both Basic and this court's prior fraud-on-the-market case law. See Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc., 482 F.3d 372, 401-03 (5th Cir.2007) (Dennis, J„ concurring in the judgment).

. Unlike this case, Greenberg did not involve a motion for class certification, but was instead an appeal from a grant of summary judgment. See Greenberg, 364 F.3d at 661.

. In Regents of the University of California, I explained why Greenberg is not a correct interpretation of this court's precedent. See 482 F.3d at 401-03 (Dennis, J., concurring in the judgment).

. Greenberg purported to find that requirement in this court’s earlier decision in Nath-enson, which, on a motion to dismiss, held that "where the facts properly considered by the district court reflect that the information in question did not affect the price of the stock then the district court may properly deny fraud-on-the-market based recovery.” Nathenson, 267 F.3d at 415. As I explained in Regents of the University of California, Nathenson does not actually support the Greenberg panel's decision to give plaintiffs the affirmative burden of showing that the misrepresentation moved the market price. See 482 F.3d at 402 (Dennis, J., concurring in the judgment).

. Incidentally, it is undisputed, as the majority acknowledges, that Allegiance's share price increased substantially immediately after each of defendants’ allegedly false statements about the company's line count. See supra at 263. The majority fails utterly to explain why that price movement is insufficient to trigger the fraud-on-the-market presumption under Greenberg.

. See Dura, 544 U.S. at 341-42, 125 S.Ct. 1627 ("In cases involving publicly traded securities and purchases or sales in public securities markets, the action's basic elements include .... (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,' see Basic, supra, at 248-49, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (non-conclusively presuming that the price of a publicly traded share reflects a material misrepresentation and that plaintiffs have relied upon that misrepresentation as long as they would not have bought the share in its absence); .... and (6) ‘loss, causation,' i.e., a causal connection between the misrepresentation and the loss.”).

. Moreover, I further disagree with the majority to the extent that its opinion can be read to suggest that loss causation can be established only by showing a drop in the market price of the security in response to an explicit corrective disclosure. Although this will frequently be the method through which plaintiffs attempt to prove loss causation, the Dura court specifically refrained from setting rigid requirements as to how plaintiffs might prove loss causation. See Dura, 544 U.S. at 346, 125 S.Ct. 1627 ("[W]e find the Ninth Circuit’s approach inconsistent with the law’s requirement that a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff’s economic loss. We need not, and do not, consider other proximate cause or loss-related questions.”).

. Even in cases where the defendant asserts that loss causation is an individual issue, peculiar to each plaintiff, that defeats the Rule 23 requirements of commonality or predominance, the district court need not require plaintiffs to actually prove loss causation at the class certification stage. Rather, the district court must only find either that all of the plaintiffs can prove loss causation in the same way or that any individual issues do not defeat commonality or predominance.