# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2011

No. 10-30368

Lyle W. Cayce
Clerk

MARIAN B. MADISON; JODI HEBERT, Wife of/and; PHILIP HEBERT, Individually and on Behalf of Their Minor Children, Joshua Hebert, Ashley Hebert, Kristina Hebert; DANETTE DOMINICK, Wife; ANDRE DOMINICK, Individually, and on Behalf of His Minor Child, Kayla Dominick,

Plaintiffs - Appellees

v.

CHALMETTE REFINING, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge:

This is an interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure. Defendant-Appellant Chalmette Refining, L.L.C., appeals the district court's order certifying a class alleging claims arising out of a petroleum coke dust release from its refinery. For the following reasons, we REVERSE the district court's order granting class certification and REMAND this case for further proceedings.

No. 10-30368

## FACTS AND PROCEEDINGS

On January 12, 2007, a number of schoolchildren, chaperoned by parents and teachers, participated in a historical reenactment at the Chalmette National Battlefield, "the site along the Mississippi River where Andrew Jackson gave the British their comeuppance." DOUGLAS BRINKLEY, THE WILDERNESS WARRIOR: THEODORE ROOSEVELT AND THE CRUSADE FOR AMERICA 414 (2009). Adjacent to the battlefield is the Chalmette Refinery. In the early afternoon, the Chalmette Refinery released an amount of petroleum coke dust that Plaintiffs-Appellees (hereinafter, "Plaintiffs"), attendees and parents of attendees of the reenactment, allege migrated over the battlefield. Plaintiffs filed suit, seeking to sue on behalf of themselves and all other individuals who were exposed to the coke dust on the battlefield.[1] They sought a variety of damages, including personal injury, fear, anguish, discomfort, inconvenience, pain and suffering, emotional distress, psychiatric and psychological damages, evacuation, economic damages, and property damages.[2]

The district court allowed the parties to conduct discovery on the issue of class certification, "[a]s it is encouraged to do." *Gene & Gene, L.L.C. v. Biopay, L.L.C.*, 624 F.3d 698, 703 n.3 (5th Cir. 2010). Chalmette Refining deposed each of the five named class representatives; Plaintiffs apparently conducted no discovery. Plaintiffs then moved for class certification under Rule 23(b)(3), asserting that this lawsuit is a type of action where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

---

[1] Plaintiffs originally filed two separate suits making nearly identical allegations. The district court consolidated the two actions.

[2] Plaintiffs also alleged that some individuals would require continued medical monitoring and attempted to form a class to recover for these costs. The district court denied Plaintiffs' request for certification of a medical monitoring class. That aspect of the district court's order is not on appeal.

No. 10-30368

methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The proposed class consisted of

> all persons entities (sic) located at the Chalmette National Battlefield in St. Bernard Parish, Louisiana, in the early afternoon of Friday, January 12, 2007 and who sustained property damage, personal injuries, emotional, mental, or economic damages and/or inconvenience or evacuation as a result of the incident.

*Madison v. Chalmette Ref., LLC*, No. 07-307, 2010 U.S. Dist. LEXIS 65708, at *3 (E.D. La. June 7, 2010). Chalmette Refining opposed the motion.

Over two years later, the district court held a hearing on the motion to certify the class. At the conclusion of that hearing, and without any evidence being introduced, the district court orally granted Plaintiffs' motion. Fourteen days later, and although the district court had not yet issued a written order, Chalmette Refining petitioned this court for permission to take an interlocutory appeal pursuant to Rule 23(f). We granted the petition. Two months later, and although it had already granted Plaintiffs' motion, the district court issued a written order again granting Plaintiffs' motion. The written order relied on the reasons stated during the class certification hearing and offered supplemental analysis. The district court later stayed proceedings pending the resolution of this appeal. *See* FED. R. CIV. P. 23(f).

## DISCUSSION

### I.     Rule 23

Rule 23(a) requires four prerequisites in order to certify a class action: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997) (alterations in original). "In addition to these prerequisites, a party seeking class

3

certification under Rule 23(b)(3) must also demonstrate both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005) (quotations omitted). The district court found that Plaintiffs satisfied all of these requirements.

## II.   Standard of Review

We review the district court's decision to certify a class for an abuse of discretion. *See, e.g., McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003). "The decision to certify is within the broad discretion of the [district] court, but that discretion must be exercised within the framework of [R]ule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).

## III.   Analysis

"Recognizing the important due process concerns of both plaintiffs and defendants inherent in the certification decision, the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320–21 (5th Cir. 2005) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). Where the plaintiff seeks to certify a class under Rule 23(b)(3), the Rules demand "a close look at the case before it is accepted as a class action." *Amchem*, 521 U.S. at 613. "[W]e stress that it is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003) (citing *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir. 2003)).

Although class certification hearings "should not be mini-trials on the merits of the class or individual claims . . . going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and

applicable substantive law in order to make a meaningful determination of the certification issues." *Unger*, 401 F.3d at 321 (citing *Castano*, 84 F.3d at 740). The "close look" demanded by *Amchem* requires examination of both "the parties' claims and evidence." *Id*. "The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification." *Id*.

At oral argument, Chalmette Refining argued for the first time that the district court erred in concluding that Plaintiffs satisfied Rule 23(a)'s typicality requirement. We decline to address this argument, however, because Chalmette Refining did not adequately raise this issue in its initial brief. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

The crux of this appeal lies in the legal basis for and sufficiency of evidence supporting the district court's findings of superiority and predominance under Rule 23(b)(3). Before certifying a class under Rule 23(b)(3), a court must determine that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider "how a trial on the merits would be conducted if a class were certified." *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Ins. Indem. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). This, in turn, "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class," a process that ultimately "prevents the class from degenerating into a series of individual trials." *O'Sullivan*, 319 F.3d at 738. Determining whether the superiority requirement is met requires a fact-specific analysis and will vary depending on

No. 10-30368

the circumstances of any given case. *See* 7AA WRIGHT, MILLER, & KANE, FEDERAL PRACTICE & PROCEDURE § 1783 (3d ed. 2005).

In *Steering Committee v. Exxon Mobil Corp.*, this court found no abuse of discretion and affirmed a district court's denial of class certification in a case arising out of a fire at Exxon's Baton Rouge chemical plant. 461 F.3d 598, 600 (5th Cir. 2006). We noted that "the district court found that 'individual issues surrounding exposure, dose, health effects, and damages will dominate at the trial' [and] [t]he district court concluded that 'one set of operative facts would not establish liability and that the end result would be a series of individual mini-trials which the predominance requirement is intended to prevent.'" *Id.* at 602. Chalmette Refining argues that this case is nearly identical to *Steering Committee* and, as such, the class certification decision should be reversed. Chalmette Refining also relies heavily on an advisory committee note to Rule 23(b)(3), which has been cited numerous times by this court as highlighting the "relationship between predominance and superiority in mass torts." *See Castano v. American Tobacco Co.,* 84 F.3d 734, 745 n.19 (5th Cir. 1996). According to the note:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

FED R. CIV. P. 23(b)(3) advisory committee's note.

The district court determined that Rule 23(b)(3)'s predominance requirement was satisfied because "there is one set of operative facts that [will] determine liability. Plaintiffs were either on the battlefield and exposed to the coke dust or they were not. This case only deals with actual exposure and not

fear of exposure. This class deals with a narrow window of exposure, in a narrow area, and to a narrow group of individuals." *Madison,* 2010 U.S. Dist. LEXIS 65708, at *16. We hold that the district court abused its discretion by failing to afford its predominance determination the "rigorous analysis" that Rule 23 requires.

The district court did not meaningfully consider how Plaintiffs' claims would be tried, as *Unger* requires. The two cases relied upon by the district court in conducting its conclusory inquiry are instructive. In *Watson v. Shell Oil*, this court affirmed a district court's decision to certify a class of over 18,000 plaintiffs seeking damages stemming from an explosion at a Shell plant. 979 F.2d 1014, 1016 (5th Cir. 1992). Whether *Watson* has survived later developments in class action law–embodied in *Amchem* and its progeny–is an open question, but even in *Watson*, the district court had "issued orders detailing a four-phase plan for trial." *Id.* at 1017–18. That plan allowed the district court to adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases. *Id.* In *Turner v. Murphy Oil USA, Inc.*, the district court granted class certification to a class of plaintiffs who suffered damages resulting from a post-Hurricane Katrina oil storage tank spill. 234 F.R.D. 597, 601 (E.D. La. 2006). Critical to the court's predominance inquiry was the fact that "Plaintiffs submitted a proposed trial plan to the Court. The plan provides for a three-phase trial." *Id.* at 606. "[T]he Court believes that the existence of a trial plan, and the potential for bifurcation of the issues of liability and damages, will address the Defendant's concern that individualized inquiries will be needed to determine damage amounts in these cases." *Id.*

In stark contrast to the detailed trial plans in *Watson* and *Turner*, the district court simply concluded that "[t]he common liability issues can be tried in a single class action trial with any individual issues of damages reserved for individual treatment." *Madison,* 2010 U.S. Dist. LEXIS 65708, at *18. The

district court failed to consider whether this case could be "streamlined using other case management tools, including narrowing the claims and potential plaintiffs through summary judgment, [or] facilitating the disposition of the remaining plaintiffs' claims through issuance of a Lone Pine[3] order." *Steering Comm*. 461 F.3d at 604. Indeed there was no "analysis or discussion regarding how it would administer the trial." *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 425–26 (5th Cir. 2004).

The court failed to identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class." *Bell Atlantic*, 339 F.3d at 301. Absent this analysis, "it was impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials," *Castano,* 84 F.3d at 745, much less whether the common issues predominate. The opinion is also silent as to the relevant state law that applies to Plaintiffs' claims and what Plaintiffs must prove to make their case. The district court characterized the issue of liability as "Plaintiffs were either on the battlefield and exposed to the coke dust or they were not," *Madison*, 2010 U.S. Dist LEXIS 65708, at *16, but this oversimplifies the issue. Chalmette Refining correctly notes that, even among the named class representatives, significant disparities exist, in terms of exposure, location, and whether mitigative steps were taken. As in *Steering Committee*, "primary issues left to be resolved would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals." 461 F.3d at 602.

---

[3] "Lone Pine orders, which derive their name from *Lore v. Lone Pine Corp.*, 1986 N.J. Super. LEXIS 1626, No. L-33606-85, 1986 WL 637507, (N.J. Sup. Ct. Nov. 18, 1986), are pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." *Steering Comm.*, 461 F.3d at 604 n.2.

No. 10-30368

We must reverse because, "[i]n its certification order, the [district] court did not indicate that it [had] seriously considered the administration of the trial. Instead, it appears to have adopted a figure-it-out-as-we-go-along approach that *Castano* criticized and that other Fifth Circuit cases have not endorsed." *Robinson*, 387 F.3d at 425–26. By failing to adequately analyze and balance the common issues against the individualized issues, the district court abused its discretion in determining that common issues predominated and in certifying the class. We do not suggest that class treatment is necessarily inappropriate. As Chalmette Refining acknowledged at oral argument, class treatment on the common issue of liability may indeed be appropriate. But our precedent demands a far more rigorous analysis than the district court conducted.

## CONCLUSION

The district court's class certification order is REVERSED and this case is REMANDED to the district court for further proceedings.

No. 10-30368

DENNIS, Circuit Judge, concurring:

I concur in the majority's opinion except as to its dicta questioning the vitality of *Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir. 1992), in light of *Amchem Products v. Windsor*, 521 U.S. 591 (1997), and its "progeny." Majority Op. 7.

This circuit has affirmed and relied upon *Watson*'s holding following *Amchem*. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) ("[I]t is theoretically possible to satisfy the predominance and superiority requirements of Rule 23(b)(3) in a mass tort or mass accident class action, a proposition this court has already accepted." (citing *Watson*, 979 F.2d at 1022-23)); *id.* ("This court has likewise approved mass tort or mass accident class actions when the district court was able to rely on a manageable trial plan—including bifurcation and/or subclasses—proposed by counsel." (citing *Watson*, 979 F.2d at 1017-18 & n.9, 1024)); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623, 628 (5th Cir. 1999) (affirming class certification in a case alleging that the casino "improperly maintained [its] air-conditioning and ventilating system" resulting in the plaintiffs' injuries and citing *Watson* as supporting the court's conclusion that Rule 23(b)(3)'s superiority requirement was satisfied).

Likewise, other circuits continue to positively cite *Watson*. *See, e.g., Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004) (citing *Watson*, 979 F.2d at 1022, for its description of Rule 23(b)(3)'s predominance requirement); *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) (citing *Watson* as an example of how a district court may modify its "trial procedures" in order to facilitate a class action).

Moreover, numerous district courts continue to rely on *Watson*, particularly to determine whether class certification is proper in a mass tort action. *See, e.g., Collins v. Olin Corp.*, 248 F.R.D. 95, 104 (D. Conn. 2008) (citing

10

*Watson* to support the court's conclusion that common questions predominated in a mass tort suit); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 447 (S.D.N.Y. 2007) (citing *Watson* as an example of where class certification of a mass tort action would be proper even after *Amchem*); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 477 (S.D.N.Y. 2005) (stating substantially the same); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696 (N.D. Ga. 2003) (citing *Watson*, 979 F.3d at 1023, as part of the court's collection of "ample support in federal decisions for granting certification of negligence claims"); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 650-51, 657 (C.D. Cal. 2000) (denying, in part, a motion to decertify a class action seeking "economic damage[s] as a result of [an oil] spill and/or the ensuing clean-up effort" and citing *Watson*, 979 F.2d at 1022, for its discussion of Rule 23(b)(3)'s superiority requirement).

Commentators also continue to cite *Watson* as representative of the case law on class actions. *See, e.g.*, 1 Joseph M. McLaughlin, *McLaughlin On Class Actions* § 4:10 (6th ed. 2010) (citing *Watson,* 979 F.2d at 1021-22, as an example of where "issues about the defendant's liability may present the required common question" justifying a class action in a "'mass accident' case[]"); 3 William Rubenstein et al., *Newberg on Class Actions* § 9:58, at 446 (4th ed. 2002) (citing *Watson* for the proposition that "the presence of individual issues will not bar a class action"); Edward F. Sherman, *'Abandoned Claims' in Class Actions*, 79 Geo. Wash. L. Rev. 483, 498-99 (2011) (citing *Watson*, 979 F.2d at 1018, as an example of how "[p]hased or issues trials have been adopted" to facilitate class actions).

I believe, consistent with this plethora of precedent, including controlling Fifth Circuit authority, that *Watson* as a source of precedential value remains strong in our circuit.