# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10320

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2018

Lyle W. Cayce
Clerk

HENRY SEELIGSON; JOHN M. SEELIGSON; SUZANNE SEELIGSON NASH; SHERRI PILCHER,

> Plaintiffs - Appellees

v.

DEVON ENERGY PRODUCTION COMPANY, L.P.,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-82

Before WIENER, GRAVES, and HO, Circuit Judges.

PER CURIAM:*

Plaintiffs-Appellees in this class action case ("Plaintiffs") are royalty owners who allege that Defendant-Appellant, Devon Energy Production Company, L.P. ("DEPCO"), breached its royalty obligations by violating the duty to market implied in the class members' mineral leases. According to Plaintiffs, DEPCO breached this duty by selling the raw, unprocessed gas to its corporate affiliate at the wellheads at a price artificially reduced by an

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10320

unreasonably high processing fee. Plaintiffs aver that DEPCO then passed this processing fee on to the royalty owners.

Plaintiffs sought to certify a class comprising royalty owners who claim that their royalty payments were reduced by DEPCO's pricing scheme. The district court held an evidentiary hearing, then certified the Class as follows:

> All person or entities who, between January 1, 2008 and February 28, 2014, (i) are or were royalty owners in Texas wells producing natural gas that was processed through the Bridgeport Gas Processing Plant by Devon Gas Services, LP ("DGS"); (ii) received royalties from Devon Production Company, L.P. ("DEPCO") on such gas; and (iii) had oil and gas leases that were on one of the [specific forms] . . . ("The Class Lease Forms").[1]

DEPCO now appeals the district court's certification decision.

## I.    FACTS AND PROCEEDINGS

Plaintiffs are royalty owners of natural gas wells operated by DEPCO in the Barnett Shale gas field. DEPCO is an oil and gas exploration and production company that is the lessee under numerous natural gas well leases. Several thousand of the wells that DEPCO operates in the Barnett Shale are serviced by the Bridgeport Rich Gathering System (the "Bridgeport System"), a series of horizontal pipelines that gather natural gas from individual wells and transport it to the Bridgeport Gas Processing Plant (the "Bridgeport Plant"). During the period of class claims, the Bridgeport System and Bridgeport Plant were owned and operated by Devon Gas Services ("DGS"). In turn, DEPCO and DGS are both wholly-owned subsidiaries of Devon Energy Corporation.

### A.    DEPCO sells gas to DGS

During all relevant times, DEPCO sold all the natural gas that it produced from wells in the Bridgeport System to DGS under a 2005 Gas

---

[1] The court also indicated several persons or entities excluded from the Class.

No. 17-10320

Purchase and Processing Agreement (the "GPPA"). Under the terms of the GPPA, DEPCO sold "wet" natural gas from the wells to DGS (1) at the wellheads, (2) for a purchase price of "82.5% of the published industry index value of the residue ["dry"] gas and natural gas liquids ("NGLs")." DGS then transported the wet gas from the individual wells, through the Bridgeport System, to the Bridgeport Plant, where the wet gas was processed into (1) NGLs and (2) dry residue gas. DGS then sold the processed dry residue gas to third parties.

The parties characterize this transaction in different ways. DEPCO says that it transferred ownership of the gas to DGS at the moment of sale at the wellhead. DEPCO claims that, because it no longer owned the gas when it was transported through the Bridgeport System and processed at the Bridgeport Plant, it did not charge Plaintiffs a "processing fee"; neither was it the seller of the NGLs or the residue gas.

According to Plaintiffs, however, these "sales" were sham transactions, as DEPCO and DGS are closely related subsidiaries of the same corporate parent, and DGS never transferred funds to DEPCO in payment for the gas. Plaintiffs contend that DEPCO did not actually "sell" the gas to DGS at the wellhead, but transported the gas to the Bridgeport Plant, where DGS "charged" DEPCO a 17.5% processing fee—a percentage far greater than the market rate for processing. Plaintiffs further contend that this processing fee was passed on to the royalty owners by DEPCO's artificial lowering of the purchase price at the wellhead by 17.5%, uniformly using this methodology for every well within the Bridgeport System. Plaintiffs insist that all royalty owners thus received lower payments as a result of DEPCO's purely internal pricing scheme.

3

B.     Implied Duty to Market in Class Leases

Each Plaintiff's royalty interest was memorialized on one of nine standard oil and gas lease forms (the "Class Lease Forms"). Plaintiffs claim that all Class Lease Forms are "proceeds" leases, in which royalty payments are based on the net proceeds, viz., the amount realized by the lessee—here, DEPCO—when the gas is sold at the well.[2] According to Plaintiffs, when a mineral lease does not contain any provision regarding a duty to market, Texas law *implies* a duty to market. This duty requires producers like DEPCO to act in good faith to obtain "the best price reasonably attainable." Plaintiffs argue that DEPCO breached the implied duty to market when it artificially lowered the price of the natural gas that it sold to DGS at the wellhead. Plaintiffs contend that because (1) all of the Class Lease Forms are deemed to include such an implied duty to market, and (2) DEPCO used a uniform pricing methodology to artificially lower the wellhead price and the resulting royalty payments, all class members have "identical duty-to-market claims."

DEPCO maintains, however, that some of the Class Leases are not subject to an implied duty to market. It claims that the district court did not examine the Class Leases and only assumed that each of them was subject to an implied duty to market. According to DEPCO, three of the named Plaintiffs' nine leases were modified to change the lessee's marketing duty, so that the implied duty to market does not apply to each of the named Plaintiff's leases, much less to each of the 4,143 Class Leases.

---

[2] As discussed more fully below, Plaintiffs submitted expert testimony from an "industry veteran" who reviewed more than 10,000 DEPCO leases. He identified 4,143 Leases on the nine Class Lease Forms which did not include any modifications or addenda that would modify the duty to market. Based on this evidence, the district court limited the Class Leases to these 4,143 documents.

C.     District Court Decision

Plaintiffs originally filed this suit in the Eastern District of Texas, alleging that DEPCO improperly calculated and intentionally underpaid royalties to Plaintiffs for gas that was processed through the Bridgeport Plant.[3] That court scheduled a day-long class certification hearing to receive evidence on the certification issue. Shortly before the date scheduled for that hearing, however, DEPCO filed an emergency motion to stay the proceedings pending resolution of its motion to transfer venue.[4] The hearing was stayed and the case was eventually transferred to the Northern District of Texas, where Plaintiffs' motion for class certification was eventually denied.[5] Plaintiffs then filed a motion for reconsideration. Their motion requested an opportunity to present evidence in support of certification, and the district court held a class certification evidentiary hearing. After reviewing the additional evidence, including "over one hundred exhibits, sizeable deposition designations, and the testimony of four live witnesses[,]" the district court granted Plaintiffs' motion and certified the class. DEPCO timely appealed.

## II.     LAW AND ANALYSIS

A.     Standard of Review

We review a district court's class certification for abuse of discretion.[6] Abuse of discretion occurs only when all reasonable persons would reject the view of the district court.[7] "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district

---

[3] These claims include gas that was processed at the Bridgeport Plant from January 1, 2008 until October 24, 2014.

[4] The motion to stay was subsequently granted by a panel of this court. *See* No. 17-90002, *Henry Seeligson, et al v. Devon Energy Production Co. LP.*

[5] *See* ECF TX ND 3:16-CV-82, 139.

[6] *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 380 (5th Cir. 2007).

[7] *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012).

court's inherent power to manage and control pending litigation."[8] We review de novo, however, whether the district court applied the correct legal standard.[9]

### B.     Federal Rule of Civil Procedure 23 Requirements

"[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."[10] This requirement is an implied prerequisite of Rule 23.[11] "However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding."[12] If the proposed class is ascertainable, the party seeking certification must also comply with Federal Rule of Civil Procedure 23.[13] That party must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.[14] If successful, that party must then satisfy the provisions of one of Rule 23(b)'s three subsections.[15] In this case, Plaintiffs rely on Rule 23(b)(3), "which requires that questions of law or fact common to the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[16] "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive

---

[8] *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)).

[9] *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

[10] *Union Asset Mgmt. Holding*, 669 F.3d at 639 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)).

[11] *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

[12] *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (unpublished) (quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)).

[13] FED. R. CIV. P. 23.

[14] FED. R. CIV. P. 23(a).

[15] FED. R. CIV. P. 23(b).

[16] *Ahmad v. Old Republic Nat'l Title Ins.*, 690 F.3d 698, 702 (5th Cir. 2012) (citing FED. R. CIV. P. 23(b)).

to warrant adjudication by representation."[17] Plaintiffs have the burden of showing that Rule 23's requirements are met.[18]

### i.   Ascertainability

The district court did not abuse its discretion in determining that the class of royalty owners was ascertainable. DEPCO relied on precedent from the Third Circuit to claim that the Plaintiffs had to demonstrate "by a preponderance of the evidence, that the class is '*currently* and readily ascertainable based on objective criteria.'"[19] But, this court has not adopted that heightened standard. Instead, a party need only demonstrate—"at some stage of the proceeding"[20]—that the class is "adequately defined and clearly ascertainable."[21] Here, both DEPCO and the public records provide sufficient objective criteria from which to identify class members.[22] We conclude that the district court did not abuse its discretion in finding that the class is ascertainable.

### ii.   Commonality

The parties do not dispute the district court's rulings regarding numerosity, typicality, or adequacy of representation; however, DEPCO does

---

[17] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[18] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

[19] *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

[20] *Frey*, 602 F. App'x at 168 (quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)).

[21] *Union Asset Mgmt. Holding*, 669 F.3d at 639 (quoting *DeBremaecker*, 433 F.2d at 734).

[22] DEPCO claims that it does not record ownership by lease and does not have complete records on past ownership.  It contends that Plaintiffs' proposed alternative—reviewing property and title records—is not administratively feasible and therefore fails to satisfy Rule 23's ascertainability requirements. We are not convinced. Before any individual class member can recover, he must demonstrate that he was entitled to receive royalty payments. "However, . . . 'the possibility that some [claimants] may fail to prevail on their individual claims will not defeat class membership' on the basis of the ascertainability requirement." *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir. 2014).

challenge that court's ruling on commonality. To satisfy Rule 23's commonality requirement, Plaintiffs had to demonstrate that there are questions of law or fact common to the class.[23] A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[24] This requirement "can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."[25]

The district court determined that the answers to two common questions would determine whether DEPCO violated the implied duty to market: (1) "Did the 82.5% value sale of residue gas and NGLs violate DEPCO's duty to market owed to royalty owners?" and (2) "Did DEPCO violate its duty to market owed to royalty owners by failing to recover profits from DGS for gas sales DGS made to third parties?"

DEPCO contends that these questions are based on incorrect application of Texas law and erroneous factual findings, leading the district court to abuse its discretion in concluding that the proposed class satisfies Rule 23(a)'s commonality requirement. If these questions are not common to the class, or if they are based on incorrect legal conclusions or factual findings, class certification was an abuse of discretion.[26]

### a. Duty to Market

DEPCO insists that the district court abused its discretion when it determined that each of the Class Leases imposed the same marketing duty

---

[23] FED. R. CIV. P. 23(a).

[24] *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

[25] *Deepwater Horizon*, 739 F.3d at 810–11.

[26] *Regents of Univ. of Cal.*, 482 F.3d at 380 ("Where a district court premises its legal analysis on an erroneous understanding of governing law, it has abused its discretion.").

without reviewing every individual lease and any "ancillary documents" that might have modified DEPCO's duty to market the gas. Relying on *Dvorin v. Chesapeake Exploration*, DEPCO contends that, under Texas law, the district court was required to review every Class Lease, as well as any ancillary documents, before determining that all the Class Leases imposed the same duty to market.

The district court in *Dvorin* determined that the leases of the proposed class members were insufficient to demonstrate that the claims could be resolved with a "common answer."[27] The court explained that, even though the "specific portions of the royalty provisions . . . are substantially the same, the court is required to review the contracts as a whole."[28] Once the court reviewed the entire document, it was clear that the contracts varied regarding "the point of sale," and "cost at the well."[29] Some even contained clauses that limited royalty payments based on the price Chesapeake paid for its share of production.[30] The *Dvorin* court held that, because other terms of the contract modified the royalty clauses, the class members' claims could not be resolved with a common answer.

There is no evidence that such differences exist here. *Dvorin* did not hold that a court must locate every potential ancillary document before determining that a group of leases imposed the same duty. There, the plain language of the contracts varied so much that it was not possible to reach a "common answer" to the plaintiffs' claims. Here, in comparison, the court determined that "none of the nine lease forms contain language that modifies the implied covenant to

---

[27] *Dvorin v. Chesapeake Expl., LLC*, No. 3:12-CV-3728-G, 2013 WL 6003433, at *6 (N.D. Tex. Nov. 13, 2013).
[28] *Id.*
[29] *Id.*
[30] *Id.*

market."[31] Defendants have not provided any ancillary documents that modify the duty to market in the Class Leases.[32] In fact, even six months after the district court certified a class based on 4,143 individual leases, DEPCO's expert challenged only five of them.

DEPCO also claims that three of the Class Lease Forms contain express marketing clauses and therefore cannot include the implied duty to market. Those clauses state that DEPCO must "use reasonable diligence to produce, utilize, or market the minerals." DEPCO is correct that this language precludes the *implied* duty to market; however, it does not necessarily impose a *different* marketing duty on DEPCO. Neither DEPCO nor Plaintiffs cite any case that stands for the proposition that an express duty to market requires either the same or a different marketing duty than the implied duty to market. In *Bowden v. Phillips Petroleum Co.*, the Texas Supreme Court evaluated a similar situation, yet declined to state a categorical rule on this issue.[33] There, the plaintiffs claimed that a group of proceeds leases, some with both express marketing clauses and, others with the implied duty to market, imposed the same duty. The court explained that it could be possible that express and implied duties to market may not "in practice require different conduct."[34]

Here, the express marketing clause in three of the Class Leases Forms imposes a duty to use "reasonable diligence," which is virtually identical to the implied duty to act as a "reasonably prudent operator."[35] Given this close

---

[31] *See Seeligson v. Devon Energy Prod. Co., L.P.*, No. 3:16-CV-00082-K, 2017 WL 68013, at *17 (N.D. Tex. Jan. 6, 2017).

[32] During the certification hearing, Plaintiffs presented testimony from an industry expert who led a team in reviewing more than 10,000 leases received from DEPCO. The expert testified that any leases which had exhibits or addenda that modified the duty to market were excluded from the class.

[33] 247 S.W.3d 690, 701 (Tex. 2008).

[34] *Id.*

[35] *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567–68 (Tex. 1981).

similarity and the fact that Texas law acknowledges that express marketing clauses might impose the same duty as the implied duty to market, the district court did not abuse its discretion in holding that DEPCO owed all class members the same duty, under either the express marketing clause or the implied duty to market.[36]

Owing a uniform duty, however, is not necessarily sufficient to establish commonality. The duty DEPCO owed to the royalty owners was "an obligation to obtain the best current price reasonably available."[37] In *Bowden v. Phillips Petroleum*, the Supreme Court of Texas explained that even if a gas producer owed "an identical duty to market" to a group of royalty owners, the jury would still need to determine "the price a reasonably prudent operator would have received at the wellhead."[38] The *Bowden* court explained that "variations in well locations, quality of production, and field regulations, among other factors, will require the jury to conduct a well-by-well analysis . . . *unless the class offers particular evidence that the gas price at the wells can be evaluated classwide.*"[39]

Plaintiffs argue that such a well-by-well analysis is not necessary here because DEPCO used a uniform pricing structure for every well in the Bridgeport System. Plaintiffs contend that they do not need to adduce evidence of a higher available price at each wellhead, but only evidence that DEPCO could have processed the gas at a fee lower than the 17.5% it paid DGS. After reviewing the parties' motions and evidence, and hearing extensive testimony regarding the Class Leases, the district court determined that DEPCO used a classwide pricing structure determined by the uniform processing fee, so that

---

[36] This determination falls squarely within the "district court's inherent power to manage and control pending litigation." *See Monumental Life Ins. Co.*, 365 F.3d at 414 (quoting *Allison*, 151 F.3d at 408).

[37] *Union Pac. Res. Grp., Inc. v. Hankins*, 111 S.W.3d 69, 72 (Tex. 2003).

[38] *Bowden*, 247 S.W.3d at 701.

[39] *Id*. at 701–02 (emphasis added).

the gas price at the wells could be evaluated classwide.[40] In light of the "essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation,"[41] we are convinced that the district court did not abuse its discretion in ruling that Plaintiffs could demonstrate that DEPCO breached its implied duty to market by basing its price on a higher processing fee than the fee that a "reasonably prudent operator would have received at the wellhead."[42] This issue is precisely the type of common question "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[43]

### b. Duty to recover downstream profits

The second question the district court found common to all class members was, "Did DEPCO violate its duty to market owed to royalty owners by failing to recover profits from DGS for gas sales DGS made to third parties?" Later in the order, the district court framed this issue as whether DEPCO breached its duty "by not following its own policy to recoup the profits DGS made on subsequent gas sales." At no point, however, did the district court

---

[40] *See Bowden*, 247 S.W.3d at 701.

[41] *Monumental Life Ins. Co.*, 365 F.3d at 414 (quoting *Allison*, 151 F.3d at 408).

[42] *See Bowden*, 247 S.W.3d at 701. As discussed more fully below, the district court made the factual determination that the price was determined based on the processing fee DGS charged DEPCO. This factual finding is reviewed for clear error. *See Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 479 (5th Cir. 2006). Furthermore, given the limit on conducting "merits inquiries" at this stage in the litigation, and the deference granted to the district court's factual findings, that court did not abuse its discretion in determining that whether DEPCO breached its duty to Plaintiffs was a common question capable of classwide resolution. *See Deepwater Horizon*, 739 F.3d at 810 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350) (citations omitted) (holding that an issue is capable of classwide resolution when the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

[43] *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

explain why the implied duty to market includes a duty to recoup profits made on downstream gas sales.[44]

DEPCO insists that neither the Class Leases nor the implied duty to market imposed a duty to recoup downstream profits; and Plaintiffs do not address this alleged duty in their brief. At best, Plaintiffs aver that DEPCO policies instructed that "DGS may not make profit at the expense of [DEPCO by] … sell[ing] gas to third parties at higher prices than the transfer price under the GPPA."[45] The district court did not provide any legal basis for imposing a duty to recover downstream profits on DEPCO, so it abused its discretion when it determined that this was a common question which could support class certification.

Fifth Circuit law, however, recognizes that even one common question may be sufficient to support commonality.[46] Here, the district court determined that the driving question behind this class litigation would be whether DEPCO artificially lowered the wellhead price, in violation of the implied duty to market. Texas law is clear that, to determine whether DEPCO has breached the implied duty to market, the court must "focus[] on the behavior of the lessee rather than on evidence of other sales."[47] Because DEPCO's behavior presents "at least one contention that is central to the validity of each class member's

---

[44] The court did not expressly find that DEPCO's sales to DGS were a sham, but, based on the way it phrased the second common question, it certainly seems to *imply* that the sale was a sham. The validity of this possible conclusion, however, is not currently before this panel.

[45] Plaintiffs do not assert that they have standing to enforce these internal guidelines, but contend that standing is a merits question which should not be resolved at this stage of the litigation.

[46] *See Deepwater Horizon*, 739 F.3d at 810.

[47] *Hankins*, 111 S.W.3d at 71.

claims[,]" the district court did not abuse its discretion in ruling that commonality was satisfied.[48]

### iii.    Predominance

Federal Rule of Civil Procedure 23(b)(3) requires the court to determine whether "the questions of law or fact common to class members predominate over any questions affecting only individual members."[49] This "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."[50] Absent this analysis, "it [is] impossible for the court to know whether the common issues would be a

---

[48] *Id.* While it is uncommon to find commonality based on a single issue, we are mindful that commonality and predominance should be evaluated by "weighing, not counting, issues." *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 912 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). Given that whether DEPCO breached its duty to market will constitute a substantial portion of the litigation, this single issue is sufficient to support the district court's commonality finding.

DEPCO argues that the district court abused its discretion because it based the purported common question in this case on erroneous factual findings regarding the type of leases involved in this case. The parties agree that DEPCO sold natural, unprocessed gas to DGS at the wellhead pursuant to a proceeds lease. In characterizing the transaction as a sale of "residue gas and natural gas liquids," the district court incorrectly described a market value lease, rather than a proceeds lease. *See Seeligson*, 2017 WL 68013, at *2. In its analysis, however, the court described the sale of natural gas at the wellhead and treated the leases as proceeds leases, triggering the implied duty to market. *See Seeligson*, 2017 WL 68013, at *15–16. Because it applied the correct analysis and ultimately described the complicated transaction accurately, the district court's initial misstatements regarding the type of gas sold at the wellhead were harmless error.

DEPCO also contends that the district court "implied" that affiliate sales should be held to a higher duty to market than non-affiliate sales. This contention seems to be based solely on the fact that the district court included the word "affiliate" in its description of the issues in this case. Nothing in the district court's opinion indicates that it sought to hold DEPCO to a higher standard because it sold the gas to its corporate affiliate. DEPCO's contention on this issue is without merit.

[49] FED. R. CIV. P. 23(b)(3).

[50] *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)).

'significant' portion of the individual trials . . . much less whether the common issues predominate."[51]

DEPCO insists that each lease raises individual issues regarding tolling and the applicable statute of limitations, precluding predominance. DEPCO explains that the class certification order includes two categories of claims that are time barred: (1) claims that DEPCO breached the implied duty to market when it entered the GPPA in 2005; and (2) claims that DEPCO breached this duty beginning on January 1, 2008, when it failed to recoup profits on DGS's downstream sales. Plaintiffs counter that the limitations periods were tolled by the discovery rule and fraudulent concealment. DEPCO responds to this by stating that the determination whether the limitation periods were tolled will require "thousands" of mini-trials. DEPCO raised these potential individual issues in the district court, but in its certification order, the court did not discuss how limitations and tolling questions might affect predominance.

Despite the potential for individual questions based on DEPCO's statute of limitations defense, the district court did not mention the role, if any, the tolling or limitations issues would play in this class action litigation. To establish predominance, the district court must identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class."[52] Absent this analysis, "it [is] impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials . . . much less whether the common issues predominate."[53] The district court did not consider the statute of limitations and tolling questions in its predominance analysis,

---

[51] *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 557 (5th Cir. 2011).
[52] *Bell Atl.*, 339 F.3d at 301.
[53] *Madison*, 637 F.3d at 557.

No. 17-10320

so it abused its discretion when it determined that common questions would predominate over individual issues and certified the class.[54]

### III.    CONCLUSION

The district court did not abuse its discretion in concluding that Plaintiffs satisfied Federal Rule of Civil Procedure 23's commonality requirement. Because the court failed to address whether the applicable statute of limitations and potential tolling questions would raise individual issues, it abused its discretion in certifying the class as written. We therefore REVERSE and REMAND for further proceedings consistent with this opinion.

---

[54] *See id.* ("By failing to adequately analyze and balance the common issues against the individualized issues, the district court abused its discretion in determining that common issues predominated and in certifying the class.").